IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KENISHA DILLARD : | |
|     PLAINTIFF, : | |
| : | |
| v. : | Civil Action No.    CV |
| : | |
| CENTRAL PENN COLLEGE, : | |
|     DEFENDANT, : | Jury Trial Demanded |

## CIVIL COMPLAINT

PLAINTIFF, KENISHA DILLARD, by and through undersigned counsel, hereby files this Civil Action Complaint against DEFENDANT, CENTRAL PENN COLLEGE, and avers the following:

### PARTIES

1. PLAINTIFF is Kenisha Dillard, who was a resident of Dauphin County Pennsylvania at all times relevant to these allegations; PLAINTIFF has since relocated to Virginia.

2. DEFENDANT is Central Penn College, who at all times relevant hereto conducts business in Enola, which is located in Cumberland County, Pennsylvania.

3. At all times material hereto, DEFENDANT was the employer of PLAINTIFF.

### NATURE OF THE CASE

4. PLAINTIFF brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000 et. seq. (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub L. No. 102-166) ("Title VII"); and the Pennsylvania Human Relations Act, as

amended, 43 P.S. §951, et seq. ("PHRA"), under the laws of Pennsylvania to remedy acts of employment discrimination against her by DEFENDANT.

5. PLAINTIFF contends the DEFENDANT discriminated against PLAINTIFF based on her race, leading to her termination from employment.

6. PLAINTIFF, an African American woman, was subjected to racial discrimination, disparate treatment, and a hostile work environment throughout her employment with DEFENDANT.

7. DEFENDANT should not have discriminated against PLAINTIFF based on her race.

**JURISDICTION AND VENUE**

8. This action involves a question of Federal Law under Title VII and related Amendments.

9. Jurisdiction is proper in the Middle District of Pennsylvania as PLAINTIFF was at all times relevant to these allegations, domiciled in Harrisburg, Pennsylvania (Dauphin County) and has since relocated to Virginia following her termination. DEFENDANT regularly and continuously conducts business at all relevant times in Enola, Pennsylvania (Cumberland County).

10. Venue is proper in the Middle District of Pennsylvania as PLAINTIFF worked for DEFENDANT in Enola, Pennsylvania and was terminated from employment on November 16, 2023.

11. On or about March 19, 2024, PLAINTIFF duly filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") against DEFENDANT.

12. On or about December 5, 2024, PLAINTIFF received a Notice of Right to Sue letter from the EEOC.

13. This action is hereby commenced within ninety (90) days of receipt of the Notice of Right to Sue Letter.

**MATERIAL FACTS**

14. In January 2022, PLAINTIFF was hired by DEFENDANT as the Program Director for Surgical Technology with an annual salary of $78,000.00.

15. PLAINTIFF, a professional with over 20 years of teaching and professional experience, relocated from Virginia to Pennsylvania in February 2022 to accept the role, uprooting her family and moving with her daughter.

16. Despite her qualifications, PLAINTIFF immediately faced challenges, including insufficient program support, lack of supplies, inadequate leadership, and restricted access to necessary resources.

17. PLAINTIFF's program was among the largest cohorts and generated significant financial contributions for DEFENDANT. Despite this, PLAINTIFF was consistently informed of food performance and received a positive annual review.

18. During the first year of her employment, PLAINTIFF had no faculty support despite managing an entire program alone against the recommendations of the governing association.

19. Early in her employment, PLAINTIFF witnessed disparate treatment when Anne Hoffman, a white colleague and Program Director for Dental, received approval to hire faculty within six months of her appointment, despite her program enrolling fewer than ten students.

20. PLAINTIFF was denied faculty support, supplies, and essential resources for her larger program, highlighting a pattern of racial discrimination.

21. PLAINTIFF was denied key access to her building, while white faculty members, including Anne Bizup, received keys. PLAINTIFF was required to notify security for building access, an unnecessary barrier imposed on her alone.

22. When raising these issues with Maggie Lebo (VP of People and Culture) and Krista Wolfe (Provost), no remedial action was taken.

23. During a July 22, 2022 conversation, Anne Bizup made a racially offensive remark, referring to a former patient as a "black crack whore" and dismissing PLAINTIFF's objections by claiming that such language was typical in Philadelphia.

24. PLAINTIFF reported this incident and other discriminatory treatment to senior leadership, including Dr. Linda Fedrizzi-Williams, President of Central Penn College, but no investigation or corrective measures were taken.

25. In December 2022, an aggressive encounter occurred when Anne Bizup, Program Director Allied Health, physically intimidated PLAINTIFF by yelling and invading her personal space over a disagreement about equipment delivery.

26. PLAINTIFF was repeatedly excluded from faculty meetings and denied opportunities for participation in management decisions.

27. In February 2023, Anne Bizup derogatorily referred to PLAINTIFF's hair as "nappy" and her nails as "claws."

28. PLAINTIFF raised concerns about discriminatory treatment to Romeo Azondekon, Vice President of Student Services, who acknowledged the issues and promised to discuss them with senior leadership.

29. In May 2023, during a parking dispute, Maggie Lebo aggressively confronted PLAINTIFF for parking in a parking space that she claimed was universally known to be hers, despite no clear designation or prior notification of such restrictions.

30. In August 2023, Chris Sheriff, Director of Facilities Operations, made a racially derogatory comment about a "big fat colored woman eating fried chicken" while recounting a personal story, further highlighting the racially hostile environment at DEFENDANT's institution.

31. On November 16, 2023, PLAINTIFF was wrongfully terminated without cause, with the stated reason being pretextual underperformance.

32. During the termination meeting, Brant Ellsworth, Assistant Professor, mockingly stated, "Keni, ha ha ha, you've come to the end of the road at Central Penn, ha ha ha."

33. Maggie Lebo was also present at the termination meeting, displaying a hostile and dismissive attitude throughout.

34. In addition to her wrongful termination, PLAINTIFF was abruptly withdrawn from her Bachelor's program in Health Care Management, which was offered as a condition of her employment.

35. The total cost of the remaining credits for the degree program was valued at approximately $31,340.00.

36. DEFENDANT's retaliatory termination caused PLAINTIFF severe emotional distress, financial hardship, and reputational damage.

## COUNT I
## DISCRIMINATION BASED ON RACE IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e et seq.)

37. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

38. Title VII prohibits employers from discriminating against individuals based on race, color, religion, sex, or national origin. (42 U.S.C. § 2000e-2(a)).

39. DEFENDANT subjected PLAINTIFF to disparate treatment based on her race, including denial of resources, harassment, exclusion from meetings, and racially offensive comments.

40. PLAINTIFF was treated less favorably than similarly situated white colleagues.

41. As a result of DEFENDANT's unlawful conduct, PLAINTIFF suffered emotional distress, reputational harm, and economic losses.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e-3(a))

42. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

43. Title VII of the Civil Rights Act of 1964 (Title VII) prohibits employment discrimination against "any individual" based on that individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a).

44. The anti-retaliation provision of Title VII, forbids an employer from "discriminating against" an employee or job applicant because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. 42 U.S.C.S. § 2000e-3(a).

45. PLAINTIFF engaged in protected activity under Title VII by repeatedly reporting incidents of racial discrimination and harassment.

46. The retaliatory conduct resulted in PLAINTIFF's wrongful termination on November 16, 2023.

**COUNT III**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII (42 U.S.C. § 2000e et seq.)**

47. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

48. Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to discriminate against an employee with respect to the terms, conditions, or privileges of employment because of that employee's race. A hostile work environment claim requires a showing that the plaintiff (1) belongs to a protected class, (2) was subjected to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) there is a basis for employer liability.

49. PLAINTIFF, as an African American woman, is a member of a protected class under Title VII. Throughout her employment with DEFENDANT, PLAINTIFF was subjected to repeated instances of discriminatory and harassing behavior based on her race.

50. PLAINTIFF experienced racially motivated exclusion and isolation in the workplace.

51. The harassment was not limited to verbal remarks. DEFENDANT's employees and management also subjected PLAINTIFF to physical intimidation.

52. PLAINTIFF repeatedly reported these discriminatory incidents to senior leadership, including Romeo Azondekon the Vice President of Student Services, Maggie Lebo,

Krista Wolfe, and Dr. Linda Fedrizzi-Williams. Despite raising valid concerns about the racially hostile environment, DEFENDANT failed to take appropriate remedial action or adequately investigate PLAINTIFF's complaints.

53. The harassment endured by PLAINTIFF was severe and pervasive enough to create an abusive working environment that significantly affected her ability to perform her job. The discriminatory treatment altered the conditions of PLAINTIFF's employment by causing emotional distress, professional isolation, and a significant decline in her ability to manage the Surgical Technology Program effectively.

54. DEFENDANT knew or should have known about the racially hostile work environment and failed to take reasonable steps to prevent or remedy the discrimination. Instead, DEFENDANT allowed the harassment to continue unabated, contributing to the deterioration of PLAINTIFF's working conditions.

## COUNT IV
## DISCRIMINATION BASED ON RACE IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. § 951-963)

55. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

56. The Pennsylvania Human Relations Act (PHRA) prohibits discrimination in employment based on race, color, religion, ancestry, age, sex, national origin, or disability. Under the PHRA, it is unlawful for an employer to discriminate against an employee with respect to hiring, tenure, compensation, terms, conditions, or privileges of employment on the basis of race. (43 P.S. § 955(a)).

57. DEFENDANT's actions were intentional and based on PLAINTIFF's race, directly violating the protections afforded by the PHRA.

**COUNT V**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (43 P.S. § 955(a))**

58. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

59. The Pennsylvania Human Relations Act (PHRA) prohibits discrimination in employment based on race and extends to protecting employees from being subjected to a hostile work environment. (43 P.S. § 955(a)). A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

60. PLAINTIFF, as an African American woman, was subjected to ongoing unwelcome conduct that was racially discriminatory.

61. The harassment PLAINTIFF experienced was both severe and pervasive, significantly altering the conditions of her employment by creating an environment of fear, exclusion, and emotional distress. The ongoing hostility impeded PLAINTIFF's ability to effectively perform her duties as the Program Director for Surgical Technology.

62. DEFENDANT's failure to investigate and address the pervasive racial harassment was intentional, willful, and demonstrated a reckless disregard for PLAINTIFF's rights under the PHRA.

63. As a direct result of DEFENDANT's unlawful conduct, PLAINTIFF has suffered emotional distress, mental anguish, humiliation, reputational damage, and economic harm, including lost wages, diminished career opportunities, and other compensable damages.

## COUNT VI
## RETALIATION IN VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## (43 P.S. § 955(d))

64. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this Complaint.

65. The Pennsylvania Human Relations Act (PHRA) prohibits employers from retaliating against individuals who oppose discriminatory practices or participate in investigations, proceedings, or hearings regarding such conduct. (43 P.S. § 955(d)).

66. PLAINTIFF engaged in protected activity under the PHRA by making repeated reports of race-based discrimination, harassment, and a hostile work environment to DEFENDANT's leadership, including reporting racially offensive comments, discriminatory denial of resources, and exclusion from critical workplace opportunities.

67. Despite PLAINTIFF's efforts to address the discriminatory conduct internally, DEFENDANT failed to take any meaningful action to investigate or remedy the discrimination and harassment. Instead, DEFENDANT responded with retaliatory actions designed to punish PLAINTIFF for engaging in protected activity.

68. DEFENDANT's retaliatory conduct culminated in PLAINTIFF's wrongful termination on November 16, 2023.

## JURY DEMAND

69. PLAINTIFF requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

70. WHEREFORE, PLAINTIFF, Kenisha Dillard, respectfully request that this Honorable Court enter judgment in her favor and against DEFENDANT Central Penn College, and the Court award PLAINTIFF actual damages for the loss of revenue, including back-pay,

differential pay, future earnings and lost benefits with interest; compensatory damages for distress, lost career, embarrassment, and humiliation; punitive damages; costs of this action and reasonable attorney's fees, and all other relief which PLAINTIFF may appear entitled or which the Court deems appropriate and just.

 

**STARK LAW GROUP, LLC**

By:_____/s/ Eric Stark_____
Eric J. Stark, Esquire
Bar Number: 200677
1370 Harrisburg Pike Lancaster, PA 17601
Phone: 717-844-6350
Email:eric@starklawllc.com

DATE: March 4, 2025